IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DREW BARRY MCLENDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:21-cv-264-RAH-JTA |
| ) | |
| SGT. TEODORO, et al., ) | |
| ) | |
| Defendants. ) | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.   INTRODUCTION

Plaintiff Drew Barry McLendon, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action alleging that, while incarcerated at the Lee County Detention Center in February 2021, Defendants Sergeant Teodoro, Officer Ellington, Officer Adams, and Officer Barner violated his constitutional rights. (Doc. No. 1.) Specifically, Plaintiff alleges that Defendants failed to protect him from an assault by another inmate and then prevented him from seeing his attorney the following day. (*Id.*) As relief, he seeks $100,000 in monetary damages. (*Id.* at 5.)

On April 6, 2021, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims. (Doc. No. 4.) On October 20, 2021, Defendants filed a joint Special Report (Doc. No. 40), in which they move for summary judgment and provide supporting evidentiary materials (Docs. No. 40-1 through 40-7; *see also* Doc. No. 42-1). On November 8, 2021, the Court issued another Order directing Plaintiff to file a response to Defendants' filings with affidavits or statements made under penalty of perjury

and other evidentiary materials. (Doc. No. 43.) On November 23, 2021, the Court received Plaintiff's response. (Doc. No. 48.)

The Court previously notified the parties that "the Court may at any time [after expiration of the time for Plaintiff to file a response] and without further notice to the parties (1) treat the [Special] Report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is appropriate, and (2) after considering any response [from Plaintiff], rule on the motion in accordance with the law." (Doc. No. 43 at 3.) Accordingly, the undersigned will now treat the Special Report as a motion to dismiss and recommend that the motion be GRANTED for Plaintiff's failure to exhaust his administrative remedies prior to filing suit.[1]

## II.  THE EXHAUSTION REQUIREMENT

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[2] Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether

---

[1] Defendants request that the Court treat their Special Report as a motion for summary judgment. (Doc. No. 40 at 24.) However, "an exhaustion defense . . . should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations and citations omitted).

[2] "42 U.S.C. § 1997e, which is designed to deter the filing of frivolous litigation against prison officials, applies to both pretrial detainees and convicted prisoners." *Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015).

2

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The requirement is not subject to waiver by a court, or futility or inadequacy exceptions." *Mathews v. Walters*, No. 3:23-CV-10264, 2023 WL 8881170, at *2 (N.D. Fla. Dec. 4, 2023) (citing *Booth*, 532 U.S. at 741 n.6).

To properly exhaust one's administrative remedies, an inmate must "us[e] all steps" in the administrative process and comply with all "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Thus, if an inmate has filed "an untimely or otherwise procedurally defective administrative grievance or appeal," he has not properly exhausted his administrative remedies. *Id.* at 83–84. If an inmate has failed to properly exhaust his available administrative remedies before filing suit, the Court *must* dismiss the action. *See Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

*Id.* (citing *Bryant*, 530 F.3d at 1373–74). "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373–74, 1376). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the

3

prisoner has exhausted his available administrative remedies." *Id.* at 1083. "The defendants bear the burden of proving that the plaintiff has failed to exhaust." *Id.* at 1082 (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

## III. FACTUAL ALLEGATIONS[3]

### a. Plaintiff's Complaint

The Complaint sets forth the following factual allegations. On February 22, 2021, Plaintiff was assaulted by another inmate "due to officer negligence." (Doc. No. 1 at 2.) Plaintiff explained to "officers on night shift and one from the day shift" that he needed to switch cells because the inmate in his cell "[was] violent and continue[d] to keep trying to fight," but they did not allow him to change cells. (*Id.* at 3.) After the subsequent assault, Plaintiff was placed in administrative segregation. (*Id.* at 2.) The following day, Plaintiff's attorney came to visit and was "instructed that he would have to come back at another time and would be unable to visit with [Plaintiff] that present day." (*Id.* at 2–3.) "Staff was aware that their acts of negligence had been the number one cause that resulted in [Plaintiff] being violently assaulted without provocation by another inmate" and they "did not want [Plaintiff's attorney] to see the damages to [Plaintiff's] face resulting from the assault." (*Id.* at 3.) Plaintiff "gave a detailed statement (written) to administration concerning the assault and the events that [led] to [him] being assaulted, as well as wanting to pursue criminal

---

[3] When necessary to resolve a factual dispute regarding exhaustion, the Court may consider facts outside of the pleadings. *See Trias v. Fla. Dep't of Corr.*, 587 F. App'x 531, 535 (11th Cir. 2014) ("The [district] judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record.") (citation omitted). However, because the issue of exhaustion can be resolved based solely on the parties' pleadings in this case, the undersigned need not discuss the parties' evidentiary submissions.

4

charges against the inmate," but at the time of filing his Complaint, he had "no response back from administration." (*Id*. at 4.)

      **b.**      **Defendants' Special Report**

In their Special Report, Defendants allege that the Lee County Detention Center has a grievance policy and procedure that is outlined in its Inmate Handbook, which is available to all inmates and can be accessed by inmates on the jail kiosk. (Doc. No. 40 at 8.) The Lee County Detention Center Grievance Procedure provides that, if an inmate is not able to informally resolve a grievance, he may complete a handwritten Inmate Request Form stating his grievance. (*Id*.) The corrections officer receiving the Inmate Request Form must sign it, date it, and note the time of day it is received. (*Id*.) If possible, that corrections officer should answer the grievance, but if he or she cannot do so, it should be forwarded to the shift supervisor for further action. (*Id*. at 9.) The responding officer will write a response on the Inmate Request Form and sign, date, and note the time of the response. (*Id*.)

A copy of the Inmate Request Form containing the response will then be made and delivered to the inmate, and the original form should be placed in the inmate's jail file. (*Id*.) The grievance should be answered by the appropriate corrections officer at the lowest level in the chain of command. (*Id*.) If the inmate is dissatisfied with the response to his grievance, he may appeal in writing to the next higher level in the chain of command of the Sheriff's Office above the person issuing the response. (*Id*.) The inmate may also submit a grievance electronically by accessing the jail kiosk and selecting the tab marked grievance. (*Id*.) However, Plaintiff's jail file is absent any grievance, handwritten or

electronically submitted, regarding the allegations in his Complaint. (*Id*.) It is also absent any appeal to Sheriff Jones regarding the allegations in his Complaint. (*Id*.)

### c. Plaintiff's Response

In his response to Defendants' Special Report, Plaintiff alleges that, "[d]ue to the LCDC's electronic kiosk limit of 20 grievances and 20 requests, [he] was prevented from electronically filing [his] safety concerns." (Doc. No. 48 at 2.) "This maximum electronic grievance and request limit was reached during a previous period of incarceration at LCDC in 2020[] and was still pending when [Plaintiff] returned in 2021." (*Id*.) Moreover, unidentified officers "have been known to destroy paper requests, grievances, and statements from inmates to avoid accountability." (*Id*. at 3.) During Plaintiff's incarceration, unidentified officers "would always advise [Plaintiff] that they do not have paper grievance forms" and that they "do not do paper grievances." (*Id*.) Plaintiff's jail file "should contain many complaints on writing paper, signed and dated stating the relief requested, unless for some reason they were never copied or filed by staff." (*Id*. at 9.) Finally, "Sheriff Jay Jones does not respond to complaints from inmates at LCDC [and], as a result, Administrative Remedies are null." (*Id*. at 9–10.)

## IV. DISCUSSION

The Court must first consider the factual allegations in Defendants' Special Report and Plaintiff's response and, if they conflict, take Plaintiff's version of the facts as true. *See Turner*, 541 F.3d at 1082. If, in that light, Defendants are entitled to have the Complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. *Id*.

6

Defendants have alleged that the Lee County Detention Center has a grievance procedure in place that is available to Plaintiff. (Doc. No. 40 at 8.) The procedure provides that, after attempting to resolve a grievance informally, an inmate may complete a handwritten Inmate Request Form stating his grievance; the receiving corrections officer will sign it, date it, and note the time of day it was received; and the responding corrections officer will write a response on the form and sign, date, and note the time of the response. (*Id*. at 8–9.) Thereafter, a copy of the form will be made and delivered to the inmate, and the original form should be placed in the inmate's jail file. (*Id*. at 9) The grievance will be answered by an appropriate corrections officer at the lowest level in the chain of command and, if the inmate is dissatisfied with the answer he receives, he may appeal in writing up the chain of command to the Sheriff. (*Id*.) An inmate may also submit a grievance electronically via the jail kiosk. (*Id*.) However, Plaintiff did not file—much less appeal—a handwritten or electronic grievance regarding the allegations at issue in this case. (*Id*.)

In response, Plaintiff does not dispute his awareness of the grievance procedure or that he failed to file a grievance pursuant to that procedure regarding the allegations in the Complaint. Instead, he alleges that (1) he had reached his grievance limit on the jail kiosk and thus was prevented from filing any further electronic grievances; (2) unidentified officers "have been known to destroy paper requests, grievances, and statements" filed by unidentified inmates "to avoid accountability"; and (3) at some unidentified time during Plaintiff's incarceration, unidentified officers told Plaintiff that "they [did] not have paper grievance forms" and "do not do paper grievances." (Doc. No. 48 at 2–3.) He further

7

appears to believe that filing a grievance would have been futile, as Sheriff Jones purportedly "does not respond to complaints from inmates." (*Id*. at 9–10.)

Accepting Plaintiff's version of the facts as true, the undersigned nevertheless finds that Plaintiff has failed to demonstrate that the grievance procedure was unavailable to him. The Supreme Court has recognized three circumstances in which an administrative remedy, although officially on the books, may be considered unavailable to an inmate. *See Ross v. Blake*, 578 U.S. 632, 643 (2016). First, a remedy is unavailable when "it operates as a simple dead end" because prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a remedy is unavailable if the grievance process is "so opaque that it becomes, practically speaking, incapable of use." *Id*. This occurs when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 644. Finally, a remedy is unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.

Even assuming that Plaintiff could not file an electronic grievance via the kiosk, he wholly fails to allege that he made any effort to file a handwritten grievance regarding the issues alleged in the Complaint. For instance, he does not allege that he sought an Inmate Request Form from any prison official in order to file such a grievance or that his request was ignored or denied. Plaintiff attempts to justify his inaction by stating that unidentified officers "have been known to destroy" inmate grievances and that unidentified individuals, at an unidentified time, told Plaintiff that they "[did] not have paper grievance forms" and "do not do paper grievances." (Doc. No. 48 at 3.) However, these bare allegations "are

8

vague and conclusory and without factual detail, context, or other support [and thus] fail to demonstrate that the [grievance] procedure was not available to him."[4] *See Armstrong v. Woods*, No. 2:18-CV-161, 2021 WL 1035103, at *6 (M.D. Ala. Feb. 23, 2021) (finding that, because the plaintiff did not allege that he personally sought a grievance form from prison staff to initiate the grievance process regarding the allegations in his complaint, nor did he state that prison staff refused a specific request from him that he be provided with that form, he failed to demonstrate that the grievance process was unavailable to him).[5]

Given that Plaintiff made no attempt to file a grievance regarding the claims currently before the Court, Plaintiff's allegations fail to establish that he was thwarted from taking part in the grievance process through machination, misrepresentation, or intimidation. *See Ross*, 578 U.S. at 644; *see also Eduardo Perez v. Milton*, No. CV419-007, 2019 WL 2078793, at *1 (S.D. Ga. Feb. 21, 2019) (determining that, when a prisoner "establishes that he has made no effort to exhaust his available administrative remedies, the Court must dismiss the Complaint") (citing *Okpala v. Drew*, 248 F. App'x 72 (11th Cir.

---

[4] Indeed, Plaintiff alleges that he was incarcerated at Lee County Detention Center on at least one separate occasion a year prior (*see* Doc. No. 48 at 2); thus, without any factual detail such as *who* told Plaintiff they did not have paper grievance forms and *when*, the undersigned cannot find that administrative remedies were unavailable to Plaintiff following the February 2021 events alleged in the Complaint. It is wholly unclear, for instance, whether these unknown individuals remained at the Detention Center and had any interaction with Plaintiff during this time or whether the paper grievance procedure changed over time.

[5] *See also Williams v. Barrow*, 559 F. App'x 979, 988 (11th Cir. 2014) (finding plaintiff's "conclusory allegation that he failed to exhaust his remedies because of 'escalating retaliation' [did] not come close to satisfying the *Turner* standard" for unavailability of administrative remedies); *Murray v. Kililis*, No. 19-21677-CV, 2020 WL 5553995, at *7 (S.D. Fla. June 18, 2020) (finding plaintiff's assertions that unidentified officials "disregarded and tampered" with his attempts to exhaust, absent supporting facts or evidence, insufficient to overcome a motion to dismiss for failure to exhaust); *Butler v. Butler*, No. 1:16-CV-36, 2018 WL 10704550, at *3 (M.D. Ga. Mar. 22, 2018) ("Conclusory allegations are not sufficient to establish exhaustion of available remedies.[] A plaintiff must point to specific facts showing that he was actually deterred from filing a grievance and that the prison's actions would cause a reasonable inmate to be deterred.").

2007); *Cole v. Ellis*, No. 5:10-CV-316, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); *Rashid v. Liberty Cnty. Jail*, No. CV 4:10-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010)).

Finally, to the extent Plaintiff believes that filing or appealing a grievance would have been futile because the Sheriff "does not respond to complaints from inmates" (*see* Doc. No. 48 at 9–10), the Eleventh Circuit has made clear that "the exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (citation omitted). Indeed, "the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure." *Pierson v. Shelton*, No. 1:07-CV-451, 2007 WL 2609811, at *2 (M.D. Ala. Sept. 6, 2007) (citations omitted); *see also Mathews*, 2023 WL 8881170, at *2 (citing *Booth*, 532 U.S. at 741 n.6). Absent a specific factual allegation that Plaintiff actually appealed a grievance regarding the allegations in his Complaint to which Sheriff Jones did not respond, Plaintiff's argument does not excuse his failure to exhaust—or even initiate—the grievance process.

Thus, taking Plaintiff's version of the facts as true, he failed to properly exhaust his available administrative remedies prior to filing this lawsuit. *See Woodford*, 548 U.S. at 83–84, 90–91. Accordingly, because such exhaustion is a mandatory precondition to suit, this case must be dismissed. *See Turner*, 541 F.3d at 1082; *Chandler*, 379 F.3d at 1286.

## V. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

1. Defendants' Special Report (Doc. No. 40), which is construed as a motion to dismiss, be GRANTED; and

2. This case be DISMISSED for Plaintiff's failure to exhaust his available administrative remedies prior to filing suit.

It is further ORDERED that, on or before **May 7, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 22nd day of April, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE